**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

PHILLIPE PADRON
and SHANNON K. MCCARTHY, D.M.D., M.S.          **CLASS ACTION**
individually and on behalf of
all others similarly situated,                          **JURY TRIAL DEMANDED**

      Plaintiffs,

vs.

FLURRY LIVE, INC.,
a foreign corporation,

      Defendant.

_____/

## CLASS ACTION COMPLAINT

Plaintiffs, Phillipe Padron and Shannon K. McCarthy, D.M.D., M.S., bring this class action against Defendant, Flurry Live, Inc., and allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

### NATURE OF THE ACTION

1.      This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, (the "TCPA").

2.      To promote its mobile application, Defendant engages in deceptive and intrusive telemarketing. Specifically, Defendant deceives users of its mobile application into granting it access to their contacts. Once in possession of users' contact numbers, Defendant, using an

automatic telephone dialing system, and without any notice or warning to its users, transmits generic telemarketing text messages to the users' contacts from spoofed[1] telephone numbers.

3.     Defendant transmits its telemarketing texts without first obtaining the express consent of recipients.

4.     Defendant's violations were knowing and willful.   Defendant has received numerous consumer complaints regarding its spam messages, but nevertheless continued to intentionally violate the TCPA to increase its revenue.

5.     Through this action, Plaintiffs seek injunctive relief to halt Defendant's illegal conduct which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals nationwide.  Plaintiffs also statutory damages on behalf of themselves and members of the class, and any other available legal or equitable remedies resulting from the illegal actions of Defendant.

**JURISDICTION AND VENUE**

6.     Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiffs allege violations of a federal statute.  Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiffs allege a national class, which will result in at least one class member belonging to a different state than that of Defendant.

7.     Plaintiffs seek up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for

---

[1] "Spoofing occurs when a caller deliberately falsifies the information transmitted to your caller ID display to disguise their identity."  https://www.fcc.gov/consumers/guides/spoofing-and-caller-id.

federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

8.      Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiffs occurred within the State of Florida and, on information and belief, Defendant has sent the same text messages complained of by Plaintiffs to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the State of Florida.

**PARTIES**

9.      Plaintiff, Phillipe Padron, is a natural person and resident of Miami-Dade County Florida.

10.     Plaintiff, Shannon K. McCarthy, D.M.D., M.S., is a natural person and resident of Orange County, Florida.

11.     Defendant is a Delaware corporation whose principal place of business is located at 582 Market Street, Suites 2002 and 2003, San Francisco, CA 94104. Defendant directs, markets, and provides its business activities throughout the United States, including the State of Florida.

**THE TCPA**

12.     The TCPA regulates and restricts the use of automatic telephone equipment.

3

13.     The TCPA protects consumers from unwanted text messages that are made with autodialers.

14.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system or prerecorded message; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

15.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

16.     In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

17.     The Federal Communications Commission is empowered to issue rules and regulations implementing the TCPA.  In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express **written** consent" for such calls to wireless numbers.  *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012)(emphasis supplied).

18.     On November 18, 2016, the FCC issued an Enforcement Advisory regarding text messages.  In its advisory, the FCC warned mobile application providers like Defendant that their applications must comply with the TCPA and that they must obtain express consent before transmitting text messages to individuals:

> This includes text messages from text messaging apps and Internet-to-phone text messaging where the technology meets the statutory definition of an autodialer. **The fact that a consumer's wireless**

**number is in the contact list of another person's wireless phone
does not, by itself, demonstrate consent to receive robotexts**.

FCC Enforcement Advisory No. 2016-06, November 18, 2016, *ROBOTEXT CONSUMER PROTECTION,*

*TEXT MESSAGE SENDERS MUST COMPLY WITH THE TELEPHONE CONSUMER PROTECTION ACT;*

(emphasis supplied).

19.     To obtain express written consent for telemarketing calls, a defendant must

establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and

conspicuous disclosure' of the consequences of providing the requested consent….and having

received this information, agrees unambiguously to receive such calls at a telephone number the

[plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of

1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15,

2012).

20.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the

initiation of a telephone call or message for the purpose of encouraging the purchase or rental of,

or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).  In determining

whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of

the communication.  *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

21.     "Neither the TCPA nor its implementing regulations 'require an explicit mention

of a good, product, or service' where the implication of an improper purpose is 'clear from the

context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

22.     "'Telemarketing' occurs when the context of a call indicates that it was initiated

and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*,

788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and*

*Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at \*49).

23.     The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003).  This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future.  Id.*

24.     In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

25.     If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent.  *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

26.     Moreover, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at \*3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending her the ***text message***). (emphasis added).

27.     According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.  *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

28.     As recently held by Judge Marcia G. Cooke, "[f]ar from a 'bare procedural violation,'" a violation of the TCPA "directly involves the substantive privacy rights the TCPA was enacted to protect." *Mohamed v. Off Lease Only, Inc.*, No. 15-23352-Civ-COOKE/TORRES, 2017 U.S. Dist. LEXIS 41023, at *6 (S.D. Fla. Mar. 22, 2017).

29.     Judge Cooke further observed that "temporary, unwanted occupations of an individual's time and electronic device are tangible injuries under the TCPA." *Id.* (citing *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1253 (11th Cir. 2015); *Gorss Motels, Inc. v. Safemark Sys., LP*, No. 616CV1638ORL31DCI, 2017 U.S. Dist. LEXIS 1399, 2017 WL 57313, at *1 (M.D. Fla. Jan. 5, 2017); J*WD Auto., Inc. v. DJM Advisory Grp. LLC*, No. 215CV793FTM29MRM, 2016 U.S. Dist. LEXIS 160869, 2016 WL 6835986, at *3 (M.D. Fla. Nov. 21, 2016); *A.D. v. Credit One Bank, N.A.*, No. 14 C 10106, 2016 U.S. Dist. LEXIS 110393, 2016 WL 4417077, at *7 (N.D. Ill. Aug. 19, 2016)).

30.     Through a TCPA claim, a plaintiff "seeks to remedy Defendant's alleged invasion of privacy, nuisance, and trespass on his cellular telephone. These kinds of torts have 'long been heard by American courts, and the right of privacy is recognized by most states.'" *Mohamed*, 2017

U.S. Dist. LEXIS 41023, at *6 (quoting *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017)).

31.     Thus, it is well-established that a plaintiff alleging a violation of the TCPA "need not allege any additional harm beyond the one Congress has identified." *Van Patten, LLC*, 847 F.3d at 1043 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)).

### DEFENDANT'S MOBILE APPLICATION AND TCPA VIOLATIONS

32.     Defendant is a mobile application developer and operator.  Defendant developed and operates Flurry Live, a video messaging application for Apple and Android mobile devices (the "Flurry App").

33.     The Flurry App has been downloaded over half a million times and, to date, Defendant has received approximately $7.1 million in funding.

34.     An individual wishing to use Defendant's service must first download the Flurry App on his/her mobile device.

35.     Once downloaded, the Flurry App directs the user through a series of onboarding screens.

36.     Defendant recently made changes to its onboarding process in response to user complaints about the Flurry App automatically sending text messages to the users' contacts.

37.     In prior versions of the onboarding process, the Flurry App automatically sent text messages to users' contacts and/or did not adequately notify users that by allowing the Flurry App to access their contacts, it would instantly transmit users' telephone numbers to Defendant's automatic telephone dialing system and cause that system to transmit a generic text message to users' contacts.

38.     In other words, users of the Flurry App were deceived into providing Defendant with access to their contacts list.  Once in possession of a user's contact list, Defendant stored the numbers in its text messaging database and, subsequently, Defendant's automatic telephone dialing system caused the text messages to be transmitted to unsuspecting individuals.  The messages were transmitted automatically and without any type of human intervention before transmission.

39.     Notably, the text messages were sent from Defendant's own telephone numbers, and not from users' telephone numbers.  The numbers used by Defendant to transmit its spam texts were fake and untraceable, otherwise known as "spoofed" telephone numbers.

40.     The purpose of Defendant's text messages was to invite others to download the Flurry App and purchase Defendant's services.

41.     At no point prior to sending its unsolicited text messages did Defendant obtain any type of consent from the recipients of the messages.

42.     Further, users of the Flurry App were not given any type of control over the content of the texts or the timing of when those texts were sent.  The users were never shown a sample of the text message before it was sent to their contacts and had no control over when the text messages were actually sent to their contacts.

43.     Defendant, not the Flurry App user, had sole control over the content of the invitational texts and sent the text messages at its own discretion.  In all, Defendant sent these text messages with little or no obvious control by the users of the Flurry App.

44.     As a result of Defendant's deceptive practices, Flurry App users played no substantive role in deciding whether to send the invitational text messages at issue, and had no control over the content or timing of the messages.

45.     Defendant's failure to disclose that it would cause unsolicited text messages to be sent to users' contacts resulted in numerous on-line complaints by users of the Flurry App.  The following is a small sample of those complaints:

- Please don't text me if you get a message from me on flurry. Idk what that is and I didn't send it

- If you get an message from me about something flurry do not open it. It is a virus

- If some app called Flurry sent you a message from me I got hacked and it's not me

- If some app called Flurry sent you a message from me I got hacked and it's not me[2]

- Spams friends, very stupid

- Worst app ever. This app will SPAM all your contacts without permission. SENDS A TEXT TO YOUR CONTACTS STATING STATING [sic] THEY HAVE A MESSAGE WAITING AND ONE OF YOUR FRIENDS INVITED THEM TO JOIN. ALL LIES. APPLE SHOULD BAN LOW LIFE APP DEVELOPERS LIKE THIS GROUP FROM APPLE PRODUCTS. If you download this app you are an idiot. Read other reviews placed by real people and you will see this info posted over and over again. Don't believe the fake reviews on this app that its life changing. The only thing life changing about this app, it will piss all your contacts off.

- App accesses your contacts and spams them friends with invites. Don't download unless you want to have a lot of awkward conversations

- This is a trolling app. DO NOT download it. iTunes. Shame on you. Remove these trolls

- If you got this by and invite or text message ,check your phone for viruses cuzz this app is a spam and it's crap

---

[2] http://www.ibtimes.com/what-flurry-app-its-sending-spam-messages-your-contacts-users-say-2510769

- PSA, this is a spam app[3]

46.    Similarly, recipients of Defendant's spam, aggravated by the nuisance, disruption, and invasion of privacy caused by Defendant's texts, have voiced their complaints on various on-line forums.  The following are a few of those complaints:

- Got a spam iMessage asking me to install the app.

- I never opened the app and I never will. Received a fake text message about a friend recommending this app and saw similar reviews of this sketchy practice.

- I received a message from Flurry saying I had friends using it and it was really just an employee from the company. Now I can't delete my account. It is disrespectful to take advantage of people like that just for some downloads.[4]

- Flurry Live App Link but didn't open in text[5]

47.    The sizeable number of complaints found on the Internet establishes that at least several thousand consumers have received Defendant's text messages.

48.    Further, Defendant typically uses the following generic format for its text messages: "Someone just sent you a message on Flurry.  Click to view the message. http://join.getflurryapp.com/0Gff/PYpMzvEfsC."

49.    The impersonal and generic nature of Defendant's text messages, combined with the large number of messages sent by Defendant, demonstrates that Defendant utilizes an ATDS in transmitting the messages.

50.    Specifically, upon information and belief, Defendant utilizes a combination of hardware and software systems to send the text messages at issue in this case.  The systems utilized

---

[3] http://appinate.com/app/1079630342/flurry-live-video-community

[4] http://appinate.com/app/1079630342/flurry-live-video-community

[5] https://www.numberguru.com/phone/413/274/4072/

by Defendant have the capacity to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made, and to dial such numbers, *en masse*, in an automated fashion without human intervention.

### FACTS SPECIFIC TO PLAINTIFF SHANNON K. MCCARTHY

51.    On April 20, 2017, Defendant caused the following automated text message to be sent to Plaintiff's cellular telephone number ending in 2465 (the "2465 Number"):

 **+1 (270) 285-0527**                                                    

You have a message on Flurry. One of your friends invited you! 💪 🔥 Click to view:http://join.getflurryapp.com/0Gff/84qA8wB7tC.

52.    Defendant's text message was transmitted to Plaintiff's cellular telephone at 2:00 a.m., causing Plaintiff to wake up and resulting in Plaintiff being unable to go back to sleep for almost the rest of the night.

53.    Plaintiff is an orthodontist who had worked twelve (12) hours on the day she received the text.  She then had to wake up early the next day for a full shift.

54.    Due to Defendant's intrusive text message, Plaintiff was exhausted during her shift and struggled to stay awake.

55.    The text message received by Plaintiff originated from telephone number 270-285-0527, a spoofed number created by Defendant.

56.    The text message received by Plaintiff is identical to the generic messages received by thousands of other individuals as outlined above.  This fact establishes that Defendant used an ATDS in transmitting the above text message to Plaintiff.

57.    The link (http://join.getflurryapp.com/0Gff/84qA8wB7tC) contained in the text message received by Plaintiff is a link to Defendant's website, where Defendant markets its application.

58.     Therefore, Defendant's text message constitutes telemarketing because it encouraged the future purchase or investment in property, goods, or services – i.e. Defendant's mobile application.

59.     Plaintiff received the subject text within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district.  Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

60.     Plaintiff has never used Defendant's application or services, has never downloaded the Flurry App on her mobile device, and has never had any type of relationship with Defendant.

61.     Plaintiff has never provided Defendant her telephone number, or provided any type of consent to receive automated text messages from Defendant.

62.     Plaintiff is the subscriber and sole user of the 2465 Number, and is financially responsible for phone service to the 2465 Number.

63.     Through its telemarketing calls, Defendant violated Plaintiff's substantive rights under the TCPA.

64.     Further, Plaintiff suffered the following concrete injuries:

    a.  Invasion of her privacy;

    b.  Inconvenience;

    c.  Unwanted occupation of her time and mental energy;

    d.  Unwanted occupation of her cellular telephone;

    e.  Nuisance;

    f.  Trespass on her cellular telephone; and

    g.  Aggravation and annoyance.

<u>FACTS SPECIFIC TO PLAINTIFF PHILLIPE PADRON</u>

65.     On April 18, 2017, Defendant caused the following automated text message to be sent to Plaintiff's cellular telephone number ending in 5318 (the "5318 Number"):



66.     The text message received by Plaintiff originated from telephone number 308-365-1941, a spoofed number created by Defendant.

67.     The text message received by Plaintiff is identical to the generic messages received by thousands of other individuals as outlined above.  This fact establishes that Defendant used an ATDS in transmitting the above text message to Plaintiff.

68.     The link (http://join.getflurryapp.com/0Gff/PYpMzvEfsC) contained in the text message received by Plaintiff is a link to Defendant's website, where Defendant markets its application.

69.     Therefore, Defendant's text message constitutes telemarketing because it encouraged the future purchase or investment in property, goods, or services – i.e. Defendant's mobile application.

70.     Plaintiff received the subject text within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district.  Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

71.     Plaintiff has never used Defendant's application or services, has never downloaded the Flurry App on his mobile device, and has never had any type of relationship with Defendant.

72.     Plaintiff has never provided Defendant his telephone number, or provided any type of consent to receive automated text messages from Defendant.

73.     Plaintiff is the subscriber and sole user of the 5318 Number, and is financially responsible for phone service to the 5318 Number.

74.     Through its telemarketing calls, Defendant violated Plaintiff's substantive rights under the TCPA.

75.     Further, Plaintiff suffered the following concrete injuries:

> h.  Invasion of his privacy;
>
> i.  Inconvenience;
>
> j.  Unwanted occupation of his time and mental energy;
>
> k.  Unwanted occupation of his cellular telephone;
>
> l.  Nuisance;
>
> m.  Trespass on his cellular telephone; and
>
> n.  Aggravation and annoyance.

<u>CLASS ACTION ALLEGATIONS</u>

76.     Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

77.     Plaintiffs represent, and are members of the following classes:

> **All persons within the United States who, within the four years prior to the filing of this Complaint, received a text message made through the use of an automatic telephone dialing system, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number, who had not expressly consented to receiving such calls**

<u>Numerosity</u>

78.     Upon information and belief, based on the widespread Internet complaints about Defendant's telemarketing text messages, the members of the class are believed to number in the thousands or millions such that joinder of all members is impracticable.

79.     The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

<u>Common Questions of Law and Fact</u>

80.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

   a.   Whether Defendant sent non-emergency text messages to Plaintiffs' and Class members' cellular telephones using an autodialer;

   b.   Whether Defendant can meet its burden of showing that it obtained prior express consent to make such calls;

16

    c.   Whether Defendant's conduct was knowing and willful;

    d.   Whether Defendant is liable for damages, and the amount of such damages; and

    e.   Whether Defendant should be enjoined from such conduct in the future.

81.    The common questions in this case are capable of having common answers. Defendant routinely places automated calls to telephone numbers assigned to cellular telephones thus, Plaintiffs and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**Typicality**

82.    Plaintiffs' claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**Protecting the Interests of the Class Members**

83.    Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Class, and have retained counsel who are experienced in prosecuting class actions. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class.

**Proceeding Via Class Action is Superior and Advisable**

84.    A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes are economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their

own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

85.    The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not.  Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
## VIOLATION OF THE TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiffs and the Class)

86.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

87.    It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service…." 47 U.S.C. § 227(b)(1)(A)(iii).

88.    Defendant – or third parties directed by Defendant – used equipment having the capacity to dial numbers without human intervention to transmit text messages to the cellular telephones of Plaintiffs and Class Members.

89.    These calls were made without regard to whether Defendant had first obtained express consent to make such calls. In fact, Defendants did not have prior express consent to call the cell phones of Plaintiffs and Class Members when the subject calls were made.

90.     Defendant violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system transmit telemarketing text messages to the cell phones of Plaintiffs and Class Members without their prior express written consent.

91.     As a result of Defendant's conduct, and pursuant to § 227(b)(3) of the TCPA, Plaintiffs and the Class Members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiffs and the class are also entitled to an injunction against future calls.

**WHEREFORE**, Plaintiffs,  Phillipe Padron and Shannon K. McCarthy, D.M.D., M.S., on behalf of themselves and the other members of the Class, pray for the following relief:

a.   A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b.   An injunction prohibiting Defendant from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones without the prior express permission of the called party;

c.   An award of actual and statutory damages; and

d.   Such further and other relief the Court deems reasonable and just.

### COUNT II
### Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiffs and the Class)

92.     Plaintiffs re-allege and incorporate the foregoing allegations as if fully set forth herein.

93.     At all times relevant, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

94.     In fact, Defendant has publicly acknowledged consumer complaints regarding

its spam texts.  Nevertheless, Defendant continued engaging in spam text messaging to promote its application.

95.      Defendant knew that it did not have prior express consent to send these text messages, and knew or should have known that its conduct was a violation of the TCPA.

96.      Because Defendant knew or should have known that Plaintiffs and Class Members had not given prior express consent to receive its autodialed calls, the Court should treble the amount of statutory damages available to Plaintiffs and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

97.      As a result of Defendant's violations, Plaintiffs and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

**WHEREFORE**, Plaintiff, Phillipe Padron and Shannon K. McCarthy, D.M.D., M.S., on behalf of themselves and the other members of the Class, pray for the following relief:

     a.   A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

     b.   An injunction prohibiting Defendant from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones without the prior express permission of the called party;

     c.   An award of actual and statutory damages; and

     d.   Such further and other relief the Court deems reasonable and just.

## <u>JURY DEMAND</u>

Plaintiffs and Class Members hereby demand a trial by jury.

Dated: May 3, 2017

Respectfully submitted,

**SHAMIS & GENTILE, P.A.**

*/s/ Andrew J. Shamis*
Andrew J. Shamis
Florida Bar No. 101754
*efilings@sflinjuryattorneys.com*
14 NE 1st Avenue, Suite 400
Miami, Florida  33132
(t) (305) 479-2299
(f) (786) 623-0915

and

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713